**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

JOHN J. MCLAUGHLIN,

Debtor.

Chapter 13

Case No. 25-30000 (KYP)

-------------------------------------------------------------x

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART FINAL FEE APPLICATION OF GENOVA, MALIN & TRIER, LLP

**APPEARANCES:**

GENOVA, MALIN & TRIER, LLP
*Counsel to Debtor and Fee Applicant*
1136 Route 9
Wappingers Falls, NY 12590
By:      Andrea B. Malin, Esq.
                Of Counsel

CHAPTER 13 STANDING TRUSTEE
399 Knollwood Road, Suite 102
White Plains, NY 10603
By:      Thomas C. Frost, Esq.
                Of Counsel

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
Leo O'Brien Federal Building
11A Clinton Avenue, Room 620
Albany, NY 12207
By:      Alicia M. Leonard, Esq.
                Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

### INTRODUCTION

Genova, Malin & Trier, LLP ("GMT"), as counsel to Chapter 13 debtor John J.

McLaughlin ("Debtor"), filed its final fee application seeking approval of legal fees in the

amount of $25,095.00 and reimbursement of expenses in the amount of $294.30 ("Fee Application").[1] Chapter 13 Standing Trustee Thomas C. Frost, Esq. ("Trustee") objects to the Fee Application[2] as does the United States Trustee for Region 2 ("UST").[3]  For the reasons stated, GMT's (i) legal fees are REDUCED from $25,095.00 to $8,805.00, and (ii) expenses are ALLOWED in the amount of $294.30.

## JURISDICTION

This Court has jurisdiction over the Fee Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York.  The Fee Application is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## BACKGROUND[4]

## A.   GMT's Legal Work in the Debtor's Bankruptcy Case

---

[1]   *See Final Fee Application of Genova, Malin & Trier, LLP as Counsel for the Debtor for Approval and Allowance of Compensation for Services Rendered and for Reimbursement of Expenses from May 22, 2025 through April 30, 2026*, dated Apr. 30, 2026 (ECF Doc. # 64); *see also Reply to the U.S. Trustee's and the Chapter 13 Trustee's Opposition to the Fee Application of Genova, Malin & Trier, LLP Pursuant to 11 U.S.C. § 330 and the Chapter 13 Trustee's Request for the Imposition of Sanctions*, dated June 17, 2026 ("Reply") (ECF Doc. # 72).  "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case.  "ECF Adv. P. Doc. # _" refers to documents filed on the electronic docket of the related adversary proceeding styled *845 Central Hudson Valley Properties LLC v. McLaughlin*, Adv. P. No. 25-09100 (KYP).

[2]   *See Affirmation in Opposition to Application for Final Allowance of Compensation and Expenses to Attorneys for Debtors Under 11 U.S.C. § 330 and § 503(a)*, dated June 2, 2026 ("Trustee Objection") (ECF Doc. # 65).

[3]   *See United States Trustee's Objection to Final Fee Application of Genova, Malin & Trier, Filed on April 30, 2026*, dated June 2, 2026 ("UST Objection") (ECF Doc. # 66)

[4]   Certain facts set forth in this section were discussed and confirmed at the Hearing (defined *infra*) with all parties present.

GMT filed a Chapter 13 bankruptcy petition on behalf of the Debtor on May 22, 2025 ("Petition Date").  (ECF Doc. # 1 (petition).)  The GMT professionals who worked on the Debtor's bankruptcy case were attorney Andrea B. Malin, Esq. ("Ms. Malin") and legal assistant Dianna VanVoorhis.  A summary of the work GMT performed during the case follows.

On June 9, 2025, Putnam County Department of Finance filed an objection to the Debtor's Chapter 13 plan on the basis that it did not provide for the full payment of its tax claim.  (ECF Doc. # 14 (Putnam County objection).)  After discussions with the Debtor and the county, GMT filed an amended plan on the Debtor's behalf, and the county withdrew its plan objection on January 8, 2026.  (ECF Doc. # 51 (letter withdrawing objection).)  GMT professionals spent 3.4 hours on this matter with legal fees totaling $1,080.00.  (*See* Fee Application ¶¶ 17-20.)

On July 21, 2025, GMT filed a motion under 11 U.S.C. §§ 506(a), 506(d), and 1322(b)(2) to bifurcate the secured claim filed by 845 Central Hudson Valley Properties, LLC ("845 Central") into secured and unsecured portions based on the Debtor's asserted value of the underlying collateral.  (ECF Doc. # 21 (lien bifurcation motion).)  After lengthy negotiations, the parties entered into a stipulation settling the motion, which was so-ordered by the Court on April 9, 2026.  (ECF Doc. # 63 (so-ordered stipulation).)  GMT professionals spent 22.2 hours on this motion with legal fees totaling $8,515.00.  (*See* Fee Application ¶¶ 10-16.)

On November 5, 2025, GMT filed a motion to transfer venue of the case from the Manhattan Division of the Southern District of New York to the Poughkeepsie Division.  (ECF Doc. # 40 (motion to transfer venue).)  The Court granted the motion on December 19, 2025 (ECF Doc. # 44 (order transferring case to Poughkeepsie Division)),

and the undersigned was assigned to the case.  GMT professionals spent 9.7 hours on this motion with legal fees totaling $3,790.00.  (*See* Fee Application ¶¶ 28-34.)

On August 18, 2025, 845 Central commenced an adversary proceeding against the Debtor asserting that the debt owed to it is nondischargeable under 11 U.S.C. § 523(a)(2), (4), and (6).  *See 845 Central Hudson Valley Properties LLC v. McLaughlin*, Adv. P. No. 25-09100 (KYP) ("Adversary Proceeding").  GMT filed a motion to dismiss for failure to state a claim, 845 Central opposed the motion, and the Court granted the motion in part and denied it in part by order dated April 16, 2026.  (ECF Adv. P. Doc. ## 15, 16, and 19.)  Subsequently, GMT filed an answer and asserted a counterclaim on April 29, 2026.  (ECF Adv. P. Doc. # 20.)  GMT professionals spent 30 hours working on the Adversary Proceeding with legal fees totaling $10,775.00.  (*See* Fee Application ¶¶ 21-27.)

GMT spent 2.8 hours working on the instant Fee Application and seeks payment of legal fees totaling $935.00.  (*Id.* ¶¶ 35-36.)

Last, GMT seeks reimbursement of expenses in the amount of $294.30 for copy costs, transcript costs, and postage.  (*Id.* ¶ 41.)

**B.      The Post-Petition Payment**

On the Petition Date, GMT filed a statement pursuant to 11 U.S.C. § 329(a) and Federal Bankruptcy Rule 2016(b) disclosing that the Debtor paid her a $3,500.00 pre-petition retainer to provide legal advice about filing for bankruptcy, prepare the petition and necessary schedules for the filing, and represent the Debtor at the meeting of creditors and the confirmation hearing.  (ECF Doc. # 3; *see also* Fee Application, Ex. B (retainer agreement, dated May 22, 2025).)

4

On or around September 2, 2025, the Debtor met with Ms. Malin, and Ms. Malin sent a letter to the Debtor the following day memorializing their meeting ("September 3 Letter").[5]  The September 3 Letter stated in relevant part as follows:

> This letter is sent to [you] to confirm our discussion during our office conference on September 2, 2025.  At that time, we discussed what needed to be done in order to get your Chapter 13 Plan to Confirmation.  First, we would have to address the [Adversary Proceeding] that has been filed against you by [845 Central].
>
> Second, as discussed, you must also address the issues in the Motion to Avoid a Portion of the Judgment Lien held against you by [845 Central].
>
> Third, as we discussed[,] we will file a Motion to Change Venue in the Case to the Bankruptcy Court in Poughkeepsie, New York.
>
> Moreover, pursuant to our consult, you have acknowledged that you understand that the Retainer Agreement signed by you in favor of this Firm makes you responsible for any additional fees and expenses incurred due to the Firm's representation of you in these matters.  *In recognition of this fact, you requested that you be permitted to pay a lump sum payment to cover the fees and expenses through the Chapter 13 Plan.  It was agreed that you would provide to the Firm a Retainer Fee in the sum of $12,500.00, against which hours worked and expenses incurred would be billed.*  The Retainer Fee will be deposited into the Firm's escrow account and will not be disbursed to the Trustee until the Bankruptcy Court has approved this Firm's Fee Application and the Amended Chapter 13 Plan providing for turnover of the Retainer Fee to the Chapter 13 Trustee.  The check should be made payable to Genova, Malin and Trier, LLP and sent to me at my address above.

(September 3 Letter at 1-2 (emphasis added).)  At some point after the meeting, the Debtor's mother sent a $12,500.00 check to GMT consistent with the September 3 Letter ("Post-Petition Payment"), and GMT deposited the check into the firm's IOLA account.

---

[5]     A copy of the September 3 Letter is attached as Exhibit A to the Reply.

On October 20, 2025, the Debtor called the Trustee's office and asked whether the Post-Petition Payment had been transferred to the Trustee. The Trustee's staff attorney Rebecca Richards, Esq. ("Ms. Richards") fielded the call and informed the Debtor that the Trustee's office had not received the $12,500.00. The Trustee's office was unaware of the Post-Petition Payment because, at that time, the funds remained in GMT's IOLA account.

On December 4, 2025, Ms. Richards called Ms. Malin to inquire about the Post-Petition Payment. Ms. Malin told Ms. Richards that the Post-Petition Payment would be used to fund a payment to be included in a forthcoming amended Chapter 13 plan. Ms. Malin said that she was holding the Post-Petition Payment in escrow and would transfer the money to the Trustee's office when she filed the amended plan. After waiting a month for an amended plan and corresponding transfer of the funds, the Trustee, on January 13, 2026, notified the UST about the phone call from the Debtor and the Post-Petition Payment. Thereafter, the UST commenced an investigation of GMT.

On March 5, 2026, GMT sent a check for $12,500.00 to the Trustee from GMT's IOLA account. In a letter accompanying the check, Ms. Malin stated that "[t]his check represents the irregular payment to be made by the [Debtor] through an amended plan being filed with the Court."[6] On March 20, 2026, GMT filed an amended Chapter 13 plan on the Debtor's behalf which reflected a March 2026 plan payment of $12,500.00. (ECF Doc. # 59 (amended plan).)

---

[6]   A copy of this letter and the check from GMT's IOLA account are attached as Exhibit A to the Trustee Objection.

On April 17, 2026, the UST sent a letter to Ms. Malin ("April 17 Letter")[7]

regarding its ongoing investigation of the Post-Petition Payment.  In the letter, the UST

stated, in part, as follows:

> While turning over the funds to the [Trustee] mitigated the issues with the [Post-petition Payment], it did not resolve them completely.  The remaining issues arise from the Debtor's apparent representation to the [Trustee] that you sent him an invoice for post-petition attorney's fees and his relative made the payment on account of those fees.

> Based on the Debtor's representations, the $12,500.00 payment appears to be in the nature of a post-petition retainer, the receipt of which triggers two requirements: the attorney must (1) disclose the post-petition payment in an amended Rule 2016(b) statement within 14 days of receipt and (2) seek court approval of the payment.

> . . .

> We acknowledge that your retainer agreement is clear that the debtor will owe fees for certain post-petition services.  However, it is also important to avoid even the appearance of impropriety with respect to attorney's fees in chapter 13 cases; and it is the United States Trustee's position that bankruptcy estate funds should never be held in the debtor's attorney's IOLA account.

(April 17 Letter at 1-2.)

## C.    The Instant Fee Application

GMT filed the instant Fee Application on April 30, 2025 seeking the award of

legal fees in the amount of $25,095.00 for the work described *supra* in section A and

reimbursement of expenses in the amount of $294.30.  The Trustee filed an objection to

the Fee Application arguing that (i) GMT's failure to disclose the Post-Petition Payment

constituted a violation of Federal Bankruptcy Rule 2016(b) and all of the fees should be

disallowed as a result, or, alternatively, (ii) the fees for prosecuting the motion to

---

[7]     A copy of the April 17 Letter is attached as Exhibit D to the Reply.

transfer venue should be disallowed because filing in the wrong division was a legal error.  (*See* Trustee Objection.)  The UST agreed that GMT's fees for prosecuting the motion to transfer venue should be disallowed and added that the legal fees in the case were high relative to the amount payable to unsecured creditors under the latest proposed plan.  (*See* UST Objection.)

In its Reply, GMT responded to the Trustee's and UST's arguments but agreed to forego the compensation for the legal fees incurred in prosecuting the motion to change venue – $3,790.00.  (Reply at 9-10.)

The court heard oral argument on June 23, 2026 ("Hearing") and took the matter under advisement.

## DISCUSSION

**A.    Applicable Legal Standards**

**1.    Disclosure**

Section 329(a) of the Bankruptcy Code provides:

> Any attorney representing a debtor in [a bankruptcy case], or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a).  Rule 2016(b) of the Federal Rules of Bankruptcy Procedure implements the disclosure requirements of section 329(a) as follows:

> (b) **Disclosing Compensation Paid or Promised to the Debtor's Attorney**
>
> (1) *Basic Requirements*.  Within 14 days after the order for relief – or at another time as the court orders – every debtor's attorney (whether or not applying for compensation) must file and send to

the United States trustee the statement required by § 329.  The
statement must:

(A) show whether the attorney has shared or agreed to share
compensation with any other entity; and

(B) if so, the particulars of any sharing or agreement to share,
except with a member or regular associate of the attorney's law
firm.

(2) *Supplemental Statement*.  Within 14 days after any payment or
agreement to pay not previously disclosed, the attorney must file
and send to the United States trustee a supplemental statement.

FED. R. BANKR. P. 2016(b).

"Disclosure of compensation pursuant to § 329 and Rule 2016(b) is mandatory,
not permissive." *In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013).  As explained in
the legislative history, "payments to a debtor's attorney provide serious potential for
evasion of creditor protection provisions of the bankruptcy laws, and serious potential
for overreaching by the debtor's attorney, and should be subject to careful scrutiny." *In
re Hackney*, 347 B.R. 432, 442 (Bankr. M.D. Fla. 2006) (quoting H.R. REP. NO. 95–595,
at 329 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6285).  "Counsel's fee revelations
must be direct and comprehensive.  Coy or incomplete disclosures which leave the court
to ferret out pertinent information from other sources are not sufficient." *In re Parklex
Assocs., Inc.*, 435 B.R. 195, 209 (Bankr. S.D.N.Y. 2010) (quoting *In re Perine*, 369 B.R.
571, 580 (Bankr. C.D. Cal. 2007)).  "The duty to disclose imposed by Rule 2016(b) is a
continuing one.  If a debtor's attorney subsequently receives funds, the attorney must
make the required disclosure by supplementing any prior disclosure." 9 COLLIER ON
BANKRUPTCY ¶ 2016.17 (16th ed. 2026); *see* FED. R. BANKR. P. 2016(b)(2).  "Compliance is
particularly necessary to the administration and disposition of Chapter 7 and Chapter 13
cases involving a voluminous number of relatively small individual cases." *Hackney*,

347 B.R. at 442 (citation omitted). Failure to disclose receipt of a post-petition retainer payment constitutes a violation of Rule 2016(b). *See In re CLST Enters., LLC*, 672 B.R. 187, 200-01 (Bankr. S.D.N.Y. 2025).

"Failure to comply with § 329 and Rule 2016(b) is grounds to deny all fees and costs sought by counsel." *In re Chatkan*, 496 B.R. 687, 695 (Bankr. E.D.N.Y. 2012) (citing supporting authorities); *In re Gorski*, 519 B.R. 67, 73 (Bankr. S.D.N.Y. 2014) ("Many courts, perhaps the majority, punish defective disclosure by denying all compensation.") (quotation omitted). While a "technical breach" may not warrant denial of all compensation, a finding of willfulness is not required. *Chatkan*, 496 B.R. at 695 (citation omitted). Rather, disgorgement may be proper even when the failure to disclose resulted from "negligence or inadvertence." *Id.* (citation omitted); *see also CLST Enters., LLC*, 672 B.R. at 201 ("A negligent failure to disclose may still result in the denial of all fees.") (citation omitted).

### 2.     Reasonable Compensation

Under section 330(a)(1) of the Bankruptcy Code, the Court may award

> (A) reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). To determine reasonableness of the compensation to be awarded, the Court shall consider:

> the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a [bankruptcy case]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the

problem, issue or task addressed; (E) with respect to a professional
person, whether the person is board certified or otherwise has
demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in cases other
than [bankruptcy cases].

11 U.S.C. § 330(a)(3).  In a Chapter 13 case, "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in [section 330]." 11 U.S.C. § 330(a)(4)(B).

**B.     Analysis**

Because GMT has agreed to forego legal fees for prosecuting the motion to transfer venue, the Fee Application seeks award of legal fees in the reduced amount of $21,305.00 and reimbursement of expenses in the amount of $294.30.  In the sections that follow, the Court will address whether (i) GMT violated 11 U.S.C. § 329(a) and Federal Bankruptcy Rule 2016(b), and if so, whether GMT's fees should be reduced, and (ii) GMT's fees should be reduced on the basis that its legal fees are high relative to the plan's proposed payment to unsecured creditors.

**1.     GMT Violated 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b)**

GMT violated 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b) by failing to disclose receipt of the $12,500.00 Post-Petition Payment in early September 2025.  In her September 3 Letter, Ms. Malin acknowledged that the payment as a "Retainer Fee . . . against which hours worked and expenses incurred would be billed." (September 3 Letter at 1.)  Failure to disclose receipt of a post-petition retainer payment violates the

11

disclosure obligations of section 329(a) and Rule 2016(b). *See CLST Enters., LLC*, 672

B.R. at 200-01.

Ms. Malin's actions caused much confusion among the parties in the case. The

Debtor apparently assumed that GMT would transfer the funds to the Trustee and called

the Trustee's office in late October 2025 to confirm that the Trustee had received the

money. The Trustee had not received the funds, which prompted Ms. Richards to call

Ms. Malin in early December 2025 to inquire about the funds. Ms. Malin represented to

Ms. Richards that she would send the money to the Trustee along with an amended

Chapter 13 plan, but when no amended plan was filed (and no money transferred), the

Trustee was compelled to contact the UST. The UST commenced an investigation in

January 2026 and correctly advised Ms. Malin that GMT's failure to disclose receipt of

the Post-Petition Payment was a violation of Federal Bankruptcy Rule 2016(b). (*See*

April 17 Letter.)

Although GMT eventually transferred the Post-Petition Payment to the Trustee

on March 5, 2026, it had improperly held the funds without fulfilling its disclosure

obligations for a period of six months. Given GMT's violation of section 329(a) and Rule

2016(b), the Court could disallow the entirety of the fees and expenses sought in the Fee

Application. *See In re Miszko*, 627 B.R. 809, 819 (Bankr. S.D.N.Y. 2021) ("[T]he

approach within the Second Circuit has uniformly been to decide Bankruptcy Code and

Rule disclosure violations within an inflexible standard. No exceptions are to be made

based upon inadvertency (slipshodness) or good faith. Many courts, perhaps the

majority, punish defective disclosure by denying all compensation.") (quoting *Gorski*, 519 B.R. at 73).[8]

While there is no viable excuse for failing to disclose the receipt of the Post-Petition Payment, there are some mitigating factors here.  First, GMT kept the funds in escrow in the firm's IOLA account, rather than transferring the funds to its operating account to pay firm-related expenses.[9]  Second, GMT eventually filed an amended Chapter 13 plan on March 20, 2025 (as Ms. Malin had previewed to Ms. Richards in December 2025), which provided for an irregular plan payment in the amount of $12,500.00.  Third, consistent with the amended plan, GMT transferred the $12,500.00 to the Trustee so that the funds could be used to pay creditor claims.

Rather than disallowing the entirety of the amounts sought in the Fee Application, the Court will reduce the fee by an amount equal to the Post-Petition Payment.  *Accord CLST Enters., LLC*, 672 B.R. at 201 (disallowing counsel's fees in the amount of the post-petition retainer rather than the entirety of the fee request where counsel's failure to disclose was not intentional).  Thus, GMT's legal fees are reduced from $21,305.00 to $8,805.00.[10]

---

[8]     GMT argues (*see* Reply at 12-14) that the Trustee's objections should be overruled because the Trustee did not follow the procedure set forth in Federal Bankruptcy Rule 9011, which requires the party seeking sanctions to give the target of the sanctions motion an opportunity to correct the sanctionable conduct.  *See* FED. R. BANKR. P. 9011.  The Trustee is not seeking Rule 9011 sanctions, so the rule is inapplicable here.

[9]     The Court is not suggesting that it is proper for a Chapter 13 debtor's counsel to hold in escrow post-petition legal fees that have not been approved by the Court.

[10]    GMT has a practice of sending monthly statements to its Chapter 13 debtor clients showing a tally of legal fees and expenses accrued in the case.  (*See* Reply, Ex. B (monthly statements sent to the Debtor).)  These statement state in bold across the top: "**CUMULATIVE BILLING STATEMENT**" followed by the month.  In smaller print across the bottom, the statement says: "Please do not remit payment at this time as a claim will be filed in your case for payment of the balance due over the life of your Chapter 13 Plan or be deducted from your Chapter 13 Trustee refund if the case converts or dismisses."

### 2.      GMT's Legal Fees Should Not be Further Reduced

The UST argues that GMT's fees should be reduced because the requested fees are high relative to the amounts to be paid to creditors under the plan.  (UST Objection at 4-5.)  The UST points out that GMT is seeking payment of fees and expenses in the aggregate amount of $25,389.30 in the Fee Application while general unsecured creditors stand to receive $11,179.70 in the latest version of the proposed plan.  (*Id.* at 5.)

However, the Court herein has greatly reduced GMT's legal fees to $8,805.00, and the revised total award to GMT is $9,099.30 ($8,805.00 legal fees + $294.30 expenses).  Moreover, the Court has reviewed the legal work performed by GMT and finds that the legal fees charged are reasonable under 11 U.S.C. § 330(a).  *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) ("As both the United States Trustee and the Keene Trustees opine, the aggregate fees are certainly high compared to the amount of liquid assets in the case.  Nevertheless, if they meet the criteria established under 11 U.S.C. § 330(a), it is neither fair nor appropriate to reduce them solely because they seem excessive.").  As set forth above, GMT resolved Putnam County's objection to the plan, litigated and settled a motion to reclassify 845 Central's secured claim, and sought dismissal of the complaint in the Adversary Proceeding.  These actions benefited the Debtor and helped to progress this Chapter 13 case.

---

The Trustee and UST both object to GMT's practice of sending monthly billing statements, and argue that the billing statements sent to the Debtor prompted the Debtor's mother to make the Post-Petition Payment.  (*See* Trustee Objection ¶ 58; April 17 Letter at 1.)  The Court need not decide the issue because it is reducing GMT's fees by the entire Post-Petition Payment amount.  However, the Court notes that sending a statement to a Chapter 13 debtor that resembles a "bill" or an "invoice" for post-petition legal fees is highly improper because those fees remain subject to Court approval under 11 U.S.C. § 330.  Further, assuming such fees are approved, they would be paid by the Chapter 13 trustee under a plan as an allowed administrative expense claim; such fees would not be paid directly to counsel by the Chapter 13 debtor.

## CONCLUSION

For the reasons stated, the (i) legal fees sought by GMT in the Fee Application are hereby **REDUCED** from $25,095.00 to **$8,805.00**, and (ii) reimbursement of GMT's expenses is hereby **ALLOWED** in the amount of **$294.30**.  Counsel for the Trustee and UST shall confer and submit a proposed order awarding GMT legal fees and expenses consistent with Local Bankruptcy Rule 2016-1.

/s/ Kyu Y. Paek

**Dated: July 24, 2026**
**Poughkeepsie, New York**



_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**